**PEDRO CARILLO, Petitioner**
**v.**
**UNITED STATES OF AMERICA, Respondent**

Civ No. 97-26 & 97-107

Ref. Crim. Nos. 89-85, 86 & 93-75

District Court of the Virgin Islands

Div. of St. Croix

February 17, 1998

Pedro Carillo, *Pro Se, Petitioner*

FINCH, *Judge*

### ORDER DENYING HABEAS RELIEF

THIS MATTER is before the Court on Pedro Carillo's petition for writ of habeas corpus, the government's response, Carillo's reply, Carillo's motion to submit a supplemental argument, motion for an evidentiary hearing, a renewed motion for transcripts, and a motion for correction of sentence.

In his petition, Carillo lists the following grounds for relief: (1) that his counsel was ineffective because of a conflict of interest; (2) counsel was ineffective for failing to investigate a biased juror; (3) counsel failed to admit relevant evidence; (4) the court gave erroneous jury instructions regarding "reasonable doubt"; (5) counsel failed to object to the imposition of "separate" sentences.

Carillo has also filed a separate pleading in which he argues that the Court erred in relying on a prior conviction on Grand Larceny in order to sentence him as a Career Offender pursuant to the United States Sentencing Guidelines ["USSG"].

## RELEVANT FACTS

On July 22, 1989, officers of the Virgin Islands Police Department [VIPD] received a report that defendant was in possession of a .357 Magnum and operating a red pick-up truck. An All Points Bulletin [APB] was placed on the truck and the occupant. At approximately 9:25 p.m., Officer Winsbut McFarlande of the VIPD spotted the vehicle with one occupant. After verifying the APB, he attempted to stop the vehicle by blaring his siren. The vehicle refused to stop and led the officer on a high speed chase into a residential area. The officer was joined by two other marked police vehicles. Defendant's vehicle refused to stop and he attempted to elude the police. After entering into a vacant lot, the officers on the scene saw the defendant pick up a long weapon, point it through the passenger side window, and discharge a shot. The officers returned fire as the vehicle sped away, striking one police car and sidesweeping a civilian car. The defendant's vehicle eventually came to a stop after hitting a tree. The officers then observed the defendant leaning out of the vehicle and manipulating a rifle, rocking it back and forth as if to chamber a round. Officer McFarlande ordered the defendant to drop the weapon, which he did. He was arrested on the scene.

Upon his arrest, defendant attempted to fight with the officers and made numerous threatening statements about killing them and their families. He allegedly bragged that he had shot at an officer before[1] and that he had served only half of the sentence. A search of defendant's vehicle also revealed a shotgun and ammunition. Carillo was charged in three separate indictments. In Crim. No. 89-85, he was charged with Virgin Islands offenses: two counts of First Degree Assault (Counts I and III); two counts of Third Degree Assault (Counts II and IV); one count of Ex-Felon in Possession of a Firearm (Count V); and one count of Unlawful Possession of a Firearm during the commission of a crime of violence (Count VI). In Crim. No. 89-86, Carillo was charged with the following federal offenses: two counts of Ex-Convict in Possession of a Firearm (Counts I and II).

Defendant subsequently fled the Virgin Islands in January 1990 and was apprehended in April 1993. As a result, in Crim. No. 93-75

---

[1] Petitioner had a prior conviction for firing at a police officer. (Dist. Ct. Crim. No. 80-21).

he was charged with Failure to Appear, in violation of 18 U.S.C. 3146(a)(1) and (b)(1)(A)(1).

During jury selection, one of the veniremen who had worked as a corrections officer at the Golden Grove Adult Correctional Facility in St. Croix responded that he thought he knew Carillo because "I think he served there before." Counsel for Carillo then moved to strike the entire jury panel. The court reserved ruling and individually examined each juror to determine any prejudice caused by the statement. His motion to strike the panel was denied.

After a jury trial, defendant was convicted of Counts II through VI in Crim. No. 89-85; both counts contained in Crim. No. 89-86; and the single count in Crim. No. 93-75. Consequently, on February 22, 1994, he was sentenced, on all charges, to a term of ten years on Counts II, III and IV (the assault charges) those terms are to run concurrently with each other. He was also sentenced to a general concurrent term of ten years for Counts V and VI (the firearm possession charges). The sentence imposed on Counts V & VI must be served without benefit of parole, probation or other suspension. Carillo was also sentenced to 240 months under the Guidelines for the two counts of Ex-felon in Possession of a firearm, (Crim. 89-86), and for Failure to Appear (Crim. No. 93-75). Thus, Carillo was sentenced to a total of 240 months, or 20 years.

Carillo filed a motion for new trial based on the claim that a member of the jury was a former corrections officer during defendant's prior incarceration. He argued that her failure to disclose this fact violated his right to a fair trial. The Court denied the motion after finding that Carillo was tried by an impartial jury. D.Ct. Crim. No. 93-75 (Order d. 3/17/94). His appeal to the Third Circuit Court of Appeals was denied on December 20, 1994.[2] On March 10, 1997, Carillo filed the instant petition for a writ of habeas corpus.

Petitioner's motion for an evidentiary hearing will be denied. A petitioner is not entitled to a hearing if, after review of the record and pleadings, the Court is satisfied that he is not entitled to

---

[2] On appeal, Carillo claimed (1) that the Court erred in failing to strike the entire jury panel (2) that the evidence was insufficient to support a verdict of guilty of assault with a deadly weapon; (3) that the evidence was insufficient to support a verdict of guilty of first degree assault; and (4) the district court erred in charging the jury on flight.

habeas corpus relief. *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994). On that basis, petitioner's motion for argument on remand, and for additional transcripts will also be denied.

The Court will address Carillo's claims in the order raised.

### DISCUSSION

### 1. Whether Defendant Suffered Ineffective Assistance of Counsel Based on Counsel's Conflict of Interest and Breach of the Duty of Loyalty

Defendant asserts that because his trial counsel, Assistant Federal Public Defender Melody M. Walcott, is married to a police officer, she harbored "negative feelings" against him, resulting in a breach of the duty of loyalty and undermining the adversarial process in violation of his Sixth Amendment right to effective counsel. He appears to argue that as a result, she failed to share discovery material and call certain witnesses which would have assisted in his defense.

■ ■ The Sixth Amendment guarantees that in all criminal prosecutions the accused shall have the assistance of counsel for his defense. U.S. CONST. AMEND. VI. Defense counsel can deprive a defendant of a right to effective assistance by failing to render "adequate legal assistance." *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). A sufficiently significant conflict of interest prevents an attorney from providing the effective assistance contemplated by the Sixth Amendment. *Freund v. Butterworth*, 117 F.3d 1543, 1571 (11th Cir. 1997). In order to prevail on an ineffectiveness of counsel claim based on a conflict of interest a habeas petitioner must demonstrate that an "actual conflict" of interest adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348, 64 L. Ed. 2d 333, 100 S. Ct. 1708 (1980). An actual conflict exists when the attorney has inconsistent interests.

■ Petitioner has failed to establish that his counsel labored under an actual conflict which adversely affected her performance. The case of *Cuyler*, upon which he relies, involved multiple representations. The Court in *Cuyler* held that a petitioner alleging a conflict of interest must demonstrate an actual conflict adversely

affected his case. Petitioner has not done so. The conflict identified by petitioner is that his defense counsel is married to a police officer and that she harbored "negative feelings" about him. That fact, standing alone, does not establish an actual conflict. The conflict cases address multiple representations wherein an attorney represents clients with adverse interests. The petitioner has not established how his counsel's marriage to a police officer presents an interest adverse to his. Such a "possible, speculative or hypothetical conflict does not suffice" to support a ruling that counsel was ineffective or that a convict is entitled to relief. *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir. 1988).

■ Petitioner's other argument that his attorney failed to share key discovery documents, failed to enter an affidavit into evidence, and failed to call certain witnesses, also fails. Petitioner refers to an affidavit submitted by Police Officer Mary Duggan which, he claims, states different facts from the testimony presented by Officer McFarland. The record clearly shows that Officer Duggan was not at the scene of the incidents giving rise to these criminal charges. As stated in her affidavit, she was assigned to follow up the investigation, and her information was culled from several sources. The officers on the scene were called to testify and were cross-examined by defense counsel. Petitioner appears convinced that the discrepancies between Officer Duggan's affidavit and the testimony of the officers on the scene would have resulted in acquittal. However, because Officer Duggan could not testify from personal experience, defense counsel's decision not to call her as a witness was sound trial strategy and does not constitute ineffective assistance of counsel. *See State of Delaware v. Southerland*, 1994 Del. Super. LEXIS 611, 1994 WL 713895 (S. Ct. Del. 1994).

■ Additionally, there is no constitutional duty to share discovery documents with petitioner. Petitioner cites no case law for this proposition, and this court finds none. The record reveals that petitioner received competent representation. The evidence at trial included testimony that petitioner was observed and identified by several police officers, and apprehended at the scene of the crime. Further, petitioner allegedly bragged about shooting at another police officer, apparently to kill him. Petitioner has not established

263

that, but for his counsel's failure to share discovery documents, the outcome of his trial would have been different.

■ Petitioner's claim that counsel failed to call certain witnesses is also without merit. To prove ineffective assistance of counsel for failure to investigate a witness, he must prove that the witness' testimony would have provided a viable defense. *Schlup v. State of Missouri*, 771 S.W.2d 895, 899 (Mo. Ct. App. 1989). Here, petitioner does not name any witnesses, nor does he state what their testimony would be. Under the facts of the case, there was substantial evidence of petitioner's guilt. Thus, petitioner has failed to establish that he was deprived of a viable defense.

## 2. Whether Counsel was Ineffective for Failing to Strike a Juror Who Failed to Honestly Answer a Material Question During Voir Dire

Petitioner raised this claim in his motion for new trial filed on October 25, 1993. On March 17, 1994, this Court denied the motion after discussing the merits of petitioner's claim. Thus, since this claim has been dismissed on the merits, the Court sees no reason to expend judicial resources addressing it at this time.

## 3. Whether Counsel's Failure to Admit Relevant Evidence is Ineffective Assistance of Counsel

■ In support of this claim, petitioner appears to argue that the information included in the police officers' statements, which were made after the incident, differed from their testimony at trial, and that his counsel was ineffective for failing to call officers Matthew and Encarnacion who were also at the scene. As the Supreme Court stated in *Strickland*, there is a strong presumption that a trial counsel's representation was professionally reasonable. *Flamer v. Delaware*, 68 F.3d 736, 753 (3d Cir. 1995). A defendant must make substantive concrete allegations of both attorney performance deficiency and actual prejudice. *Southerland*, 1994 Del. Super. LEXIS 611, 1994 WL at *3. As in the *Southerland* case, Carillo appears to be concerned with what he perceives as discrepancies in the police reports. However, his trial counsel knew how to deal with this situation and subjected the testifying officers to lengthy cross examination. The incident for which Carillo was charged was

witnessed completely by Officer McFarland, and corroborated by Officers Friday and Bramble, who were also on the scene. As the court stated in *Southerland*, "the 'conflict' here stems from the defendant's unwillingness to accept his situation, specifically, the overwhelming evidence against him." *Id.* Based on the facts and the record, defendant has not carried his burden that his counsel's trial performance fell below what was constitutionally required.

## 4. Whether Counsel was Ineffective for Failing to Object to the Erroneous Jury Instructions on "Reasonable Doubt"

Petitioner contends that his trial counsel's failure to object to erroneous jury instruction on reasonable doubt constituted ineffective assistance of counsel. A constitutionally deficient reasonable doubt instruction violates the Fifth and Sixth Amendments to the constitution. *Sullivan v. Louisiana,* 508 U.S. 275, 113 S. Ct. 2078, 2081-2083, 124 L. Ed. 2d 182 (1993). The reasonable doubt instruction has come under considerable scrutiny for confusing the standard of proof necessary for conviction. See *Holland v. United States,* 348 U.S. 121, 140, 99 L. Ed. 150, 75 S. Ct. 127 (1954); *United States v. Inserra,* 34 F.3d 83 (2d Cir. 1994); *United States v. Jacobs,* 44 F.3d 1219 (3d Cir.), *cert. denied,* 514 U.S. 1101, 131 L. Ed. 2d 754, 115 S. Ct. 1835 (1995). Analysis of jury instructions claimed to impair a constitutional right "must focus initially on the specific language challenged." *Smith v. Horn,* 120 F.3d 400, 411 (3d Cir. 1997), and the allegedly constitutionally infirm language must be viewed in the context of the entire charge. *Flamer,* 68 F.3d at 752. The proper inquiry is whether there is a reasonable likelihood that the jury has applied the challenged instructions in a way that renders the verdict unreliable. *Estelle v. McGuire,* 502 U.S. 62, 112 S. Ct. 475, 482, 116 L. Ed. 2d 385 (1991).

At Carillo's trial, the District Court gave the following instruction:

> "The government is not required to produce evidence that will exclude every possibility of the defendant's innocence. It is only required to prove his guilt beyond a reasonable doubt, not beyond all possible doubt. The test is one of reasonable doubt.

A reasonable doubt is a fair doubt based upon reason and common sense — the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that you would be willing to rely and act upon it unhesitatingly.

While bearing in mind it is rarely possible to prove anything to an absolute certainty, you must remember, as well, that a defendant must never be convicted on mere suspicion, conjecture or speculation.

Reasonable doubt arises also from a want of evidence or lack of proof. If you find that the government has failed to produce evidence sufficient to satisfy you of the guilty [sic] of the defendant beyond a reasonable doubt, he is entitled to an acquittal or a verdict of not guilty. But if, after considering all the evidence and giving the accused the benefit of a reasonable doubt both as to the evidence presented and the lack of evidence, you are led to the conclusion that he is guilty, you should so declare by your verdict."

Petitioner claims that similar language (characterized in *Holland* as a "two inference" instruction) was invalidated in *United States v. Roberto Colon-Pagan*, 1 F.3d 80 (1st Cir. 1993). There, a charge which instructed the jury that reasonable doubt meant "proof of such a convincing character that a person. . . would be willing to rely and act upon it" was held to be unconstitutional, requiring the granting of a new trial. *Id.* at 81-82. Such an instruction, said the court, gave "the jury the incorrect impression that it can convict a defendant in a criminal case upon the basis of evidence no stronger than might reasonably support a decision to go shopping or to a movie or to take a vacation." *Id.* at 81.

This Court finds that the jury instruction in this case was not comparable to the one struck down in *Colon-Pagan*. The model instruction on reasonable doubt provided in DEVITT, BLACKMAR, WOLFF AND O'MALLEY'S FEDERAL JURY PRACTICE AND INSTRUCTIONS, VOL. 1 § 1210 (1992), suggests the following language:

A reasonable doubt is a doubt based upon reason and common sense — the kind of doubt that would make a

reasonable person hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon *it in the most important of his or her own affairs.*" [Emphasis added].

Although not identical, when viewed in the context of the entire charge, the inclusion of the term "unhesitatingly" in this case makes the charge different from the one in *Colon-Pagan* and more akin to the one contained in the treatise.

The Third Circuit Court of Appeals so held in the recent case, *United States v. Isaac*, 1998 WL 15849 *4 (3d Cir. 1998),[3] a case arising in this jurisdiction. The Court found language identical to the one used *sub judice*, when taken as a whole, "adequately conveyed the government's burden of proof to the jury." The Court explained:

"The court repeatedly stated that the government was required to prove its case beyond a reasonable doubt, and that the burden never shifted to the defendant. The court accurately explained that the standard was high, but not the point of absolute certainty or to the exclusion of possibilities which defy common sense. By analogizing the standard of proof to the level of certainty an individual would require before unhesitatingly acting in important personal affairs, the court provided jurors with a comprehensible benchmark. Although the use of the "two inference" example suggested that the standard is lower than it is, this defect was counterbalanced by the explanation that preceded and succeeded it. Accordingly, we conclude that the jury instruction, taken as a whole, was not constitutionally deficient."

*Id.*

■ Under the analysis in *Isaac*, this Court concludes that the reasonable doubt instruction given to the jury in this case was constitutionally sufficient and the trial court did not so seriously

---

[3] The case was initially decided on July 30, 1997. That opinion was withdrawn on grant of a rehearing held on August 27, 1997. The current opinion was entered on January 24, 1998.

misdescribe the government's burden of proof that the verdict violated the constitution. Moreover, as in Isaac, the "two inference" instruction given to Carillo's jury was counterbalanced by the subsequent explanation that "reasonable doubt arises also from a want of evidence or a lack of proof." Accordingly, counsel was not remiss for failing to object.

### 5. Whether Counsel was Ineffective for Failing to Object to the Court's Imposition of Separate Sentences

Petitioner claims that his counsel provided ineffective assistance in failing to argue that the court imposed "separate" sentences for the same offense (Ex-Convict in Possession of a Firearm and Unlawful Possession of a Firearm During a Crime of Violence), in violation of his constitutional rights. Although the petitioner did not identify the particular constitutional provision, he appears to be making a double jeopardy argument.

■ The Double Jeopardy Clause protects an individual against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). The underlying premise of the rule is that Congress does not intend to punish the same offense under two different statutes; thus, where two statutory provisions describe the "same offense" they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent. *United States v. Xavier*, 2 F.3d 1281, 1290 (3d Cir. 1993). The test to be applied to determine whether two offenses are the same is whether each provision requires proof of a fact which the other does not. *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 52 S. Ct. 180 (1932).

To be found guilty as an Ex-felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g), the government had to prove that the petitioner (1) was a felon (2) and knowingly possessed (3) a firearm. Possession of a Firearm During a Crime of Violence, in violation of 14 V.I.C. § 2253(a) requires proof that a defendant (1) knowingly possessed a firearm (2) without authorization (3) during a crime of violence. Xavier at 1291.

The question whether these charges describe the "same offense" was answered in both *Xavier* and *Ball v. United States*, 470 U.S. 856,

84 L. Ed. 2d 740, 105 S. Ct. 1668 (1985). First, the Xavier Court noted that the offenses of Unlawful Possession of a Firearm during a crime of violence, and Unlawful Possession of a Firearm, are described in the same statute — 14 V.I. 2253(a). Second, the Court noted that the Virgin Islands statute did not authorize multiple punishment but, instead, provided only for an enhancement of punishment upon a finding that the defendant was a felon. 2 F.3d at 1291; *see also Rabess v. Govt. of the Virgin Islands*, 868 F. Supp. 777, 30 V.I. 348, 355 (T. Ct. St. Croix, 1994). As a result, Xavier's sentences were vacated and the trial court was directed to impose a general sentence up to the maximum allowable under the statute. *Id.* at 1292.

In *Ball*, the Supreme Court held that a defendant could not be subjected to separate sentences for a conviction on receipt of a firearm as a convicted felon (in violation of 18 U.S.C. § 922(h), and simple possession of the same firearm (in violation of 18 U.S.C. § 1202). After examining the elements of the two offenses, the court noted that "Congress seems clearly to have recognized that a felon who receives a firearm must also possess it and thus, [Congress] had no intention of subjecting that person to two convictions for the same act." *Id.*

Since the cases hold that neither statute authorizes multiple punishment, under the reasoning of *Xavier* and *Ball*, the offenses charged herein: felon in possession of a firearm and possession of a firearm during a crime of violence are the "same" for purposes of the *Blockburger* test, and the imposition of separate sentences in this case would violate the Double Jeopardy Clause.

██ However, the record indicates that Carillo received a concurrent, general ten year sentence on the two gun possession charges discussed above. That sentence is to run concurrently with the one imposed for the assault charges and consecutive only to the sentence imposed for failure to appear, a totally distinct offense. The transcript of the sentencing hearing reveals that the Court was well aware of the type of sentence to be imposed, when it stated, "Counts V and VI are the gun possession charges . . . . My understanding of the rules in the Third Circuit is that there will be a general sentence for those two, and that will be ten years . . . ." Tr. of Sent., p. 21. Thus, Carillo's claim that his counsel was

ineffective for failing to object to an illegal sentence lacks merit because the trial court did not impose separate sentences for the same offenses.

## 6. Whether the Court Erred in Sentencing Carillo as a Career Offender Under the Sentencing Guidelines

Carillo's final argument challenges the nature of one of the prior offenses used to qualify him as a Career Offender for purposes of sentencing under the Sentencing Guidelines. Persons incarcerated pursuant to federal law can obtain relief from their sentences under 28 U.S.C. § 2255 upon grounds that the "sentence was imposed in violation of the Constitution, or law of the United States . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *United States v. DiMaio*, 1994 WL 25376 (E.D. Pa. 1994).

In Carillo's case, the government relied on two prior felony convictions — for Assault (D. Ct. Crim. No. 80-21), and Grand Larceny of a vehicle (D. Ct. Crim. No. 79-112).[4] Carillo argues that the offense of grand larceny is not a "crime of violence" and should not have been used to enhance his criminal status. Because Carillo was sentenced in 1993, the Guidelines in effect at that time are relevant. Under the Guidelines,

> "[a] defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense."

U.S.S.G. § 4B1.1.

The record indicates that Carillo was over eighteen, the instant offense was for assault, and he had two prior felony convictions. A crime of violence is defined in U.S.S.G. § 4B1.2. as

> "any offense under federal or state law punishable by imprisonment for a term exceeding one year that — (i)

---

[4] Both convictions were for violations of Virgin Islands law.

270

has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

The Virgin Islands grand larceny statute, 14 V.I. § 1083, provides that

Whoever takes property —

(1) which is of $ 100 or more in value; or

(2) from the person of another —
commits grand larceny and shall be imprisoned for not more than ten years.

Moreover, 23 V.I. § 451(e), lists grand larceny as a "crime of violence." Thus the issue is which definition controls.

In *Stinson v. United States*, 508 U.S. 36, 113 S. Ct. 1913, 1916-1920, 123 L. Ed. 2d 598 (1993), the Supreme Court held that the Guidelines Manual's commentary which interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute or is inconsistent with, or a plainly erroneous reading, of that guideline. Further, the Court stated that failure to follow, or a misreading of the guidelines results in an erroneous sentence and should be set aside. *Id.* At issue in *Stinson* was the commentary to § 4B1.2, including the definition of the term "crime of violence." There, the Court established unequivocally that the offense of felon-in-possession of a firearm was not a crime of violence, thus invalidating the sentence imposed by the lower court. The Court noted that "the Guidelines bind judges and courts in the exercise of their uncontested responsibility to pass sentence in criminal cases." *Id.* 113 S. Ct. at 1917 (*citing Mistretta v. United States*, 488 U.S. 361, 109 S. Ct. 647, 665, 102 L. Ed. 2d 714 (1989).

In a case similar to the one *sub judice*, the Third Circuit acknowledged that the Virgin Islands definition of grand larceny does not satisfy § 4B1.2 of the Guidelines. *In United States v. John*, 936 F.2d 764, 770 (3d Cir. 1991) (*overturned on other grounds*), the Court announced, "if we were limited to consideration of the elements of the offense of conviction, we could not treat the grand

larceny conviction as a predicate offense for career criminal status."

Having determined that the Guidelines definition applies, the court notes that in addition to examining the language of the statute in issue, it must look only to the facts contained in the charging instrument. The Information charging Carillo with grand larceny reads as follows:

> On or about the 5th day of September, 1979, in the Virgin Islands of the United States, Judicial Division of Saint Croix, PEDRO CARILLO aka "FUMA" did unlawfully take, steal and carry away one 1978 blue Chevette station wagon, four door, belonging to National Car Rental, and rented by Mr. Richard Boehm of the Club Comanche, with a value well in excess of One Hundred Dollars ($ 100.00), with intent to permanently deprive said owner thereof, in violation of Title 14 V.I.C. § 1083(1)."

Based on the foregoing, this Court finds that the offense of grand larceny does not have as an element the use, attempted use or threatened use of force and is not one of the crimes explicitly listed in 4B1.2(1)(ii). Thus, although the Virgin Islands legislature characterizes grand larceny as a crime of violence, this Court concludes that the Guidelines definition applies. A convicting state court's definition cannot control the meaning of a term defined in the Sentencing Guidelines since it would thwart Congress' intent to have uniform definitions independent of those used by the various states' criminal codes. See Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143, 2154-55, 109 L. Ed. 2d 607 (1990). Moreover, the Information does not establish that the charge involved conduct presenting "a serious potential risk of physical injury to another."[5] Accordingly, it cannot be used to qualify this defendant as a Career Offender.

Despite this finding, a review of the record indicates that although he was categorized as a Career Offender, Carillo was not

---

[5] Indeed, the affidavit supporting the information stated that Carillo took the vehicle while it was parked and out of the presence of Mr. Boehm. He and his co-defendant were first observed after they were already in the vehicle. They took off upon being seen by an employee of the victim.

sentenced pursuant to that provision. The PreSentence Report correctly stated that because of the consecutive sentence recommended for the charge of Failure to Appear, he was sentenced to a statutorily authorized maximum sentence by operation of Guidelines § 5G1.1(c).[6]

 As a Career Offender, with a total offense level of 34 and an automatic criminal category of VI, the applicable guideline range for Carillo would have been 262-327 months. If he were not considered a Career Offender, his Criminal history category would be V and the applicable range would be 235-293. In any event, such calculations are moot since, by operation of § 5G1.1(c), the Court was bound to sentence him to the statutory maximum of 240 months, a term falling within the guideline range of 235-293 months, and well below the range recommended for a Career Offender. Thus, despite the fact that Carillo was erroneously labeled as a Career Offender, that categorization did not result in the imposition of an illegal sentence. Accordingly, he is not entitled to habeas relief.

## CONCLUSION

Based on the foregoing, this Court finds that petitioner Pedro Carillo has failed to establish that the performance of his trial counsel fell so far below what was constitutionally required, that the verdict of guilty in this case was unreliable. Additionally, petitioner's claims that the jury instructions were erroneous, and that his sentence was in any way unlawful, also lack merit. The petition for a writ of habeas corpus must be denied.

Accordingly, it is hereby ORDERED AS FOLLOWS:

1. that Pedro Carillo's petition for a writ of habeas corpus is DENIED;

2. that the motion for an evidentiary hearing is DENIED;

3. that the motion for supplemental argument is DENIED;

---

[6] Although the Pre Sentence Report listed (a), the correct provision is (c) which describes how a statutorily authorized maximum sentence affects a defendant's guidelines range by directing the court to impose a statutorily authorized maximum sentence which falls within the otherwise applicable guideline range.

4. that the motion for additional transcripts is DENIED;

5. The Clerk of the Court is directed to CLOSE THE FILE.

DATED: February 17, 1998.