**OMAR JAMIL SUAREZ, Appellant/Petitioner**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, VINCENT FRAZER,**
Attorney General of the Virgin Islands, and ROSALDO HOSFORD,
Warden, Golden Grove Correctional Facility,
Appellees/Respondents

S. Ct. Civil No. 2009-0099

Supreme Court of the Virgin Islands

June 13, 2012

David J. Cattie, Esq., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Appellant.*

Terryln M. Smock, Esq., AAG, V.I. Department of Justice, St. Thomas, USVI, *Attorney for Appellees.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(June 13, 2012)

CABRET, J. In 2003, Omar Jamil Suarez was convicted of aggravated rape in the first degree and rape in the first degree based on allegations of sexual contact with a minor. After exhausting all his appeals, Suarez petitioned the Superior Court for a writ of habeas corpus in 2007, claiming that his trial court counsel provided ineffective assistance to him in violation of the Sixth Amendment. The Superior Court denied the petition. Suarez now appeals that denial, arguing that his conviction must be vacated because (1) trial counsel failed to object to the admission of the People's expert witness at trial, (2) trial counsel failed to call a witness whose testimony would have shown the victim's testimony to be fabricated or coached, and (3) trial counsel failed to object to questions by the People implying that Suarez attempted to hamper the investigating officer's ability to interview a material witness. For the reasons that follow, we affirm the Superior Court's September 29, 2009 Order denying issuance of the writ.

## I. FACTS AND PROCEDURAL HISTORY

On May 29, 2003, Suarez was convicted of aggravated rape in the first degree in violation of V.I. CODE ANN. tit. 14, § 1700(a)(1) and rape in the first degree in violation of 14 V.I.C. § 1701(2). At trial, the People established their case primarily through the testimony of the victim, A.B., who was ten years old at the time of the assault on July 31, 2002. On that date, Suarez was babysitting A.B. and her four-year-old cousin S.S., who is Suarez's daughter. While babysitting the girls, Suarez suggested that they play a "tasting game." Suarez blindfolded both girls and had them

taste various food items on the tip of his finger. (J.A. 160-61.) Eventually, A.B. felt "something big" and "round" that was not a finger go in her mouth that started "kind of small" and "kind of soft," and got "kind of bigger" and "kind of harder." (J.A. 162-63.) Suarez instructed her not to bite what was in her mouth. When Suarez took the item from her mouth, A.B. told him that she did not taste anything, so he told her to "suck further up" and placed the item back in her mouth and pushed her head down on it. (J.A. 162.) A.B. testified that she "felt little hairs on [her] face." (J.A. 162.) Eventually, it reached the back of her throat and she felt like she was "going to throw up." (J.A. 163.) A.B. testified that she thought the item was Suarez's penis.[1] Suarez removed the item from A.B.'s throat, and a few minutes later removed the blindfolds from the girls. A.B. testified that she saw "banana white stuff" on his pants after he removed the blindfolds. (J.A. 167.) However, A.B. did admit on cross examination that, due to the blindfold, she was not certain what had been placed in her mouth.

The People also presented the testimony of Dr. Melinda Astran, a board certified family medicine physician, who had examined A.B. eight days after the assault. According to Dr. Astran, A.B.'s parents took her to Dr. Astran to ensure that she had not contracted a sexually transmitted disease during the incident. Dr. Astran testified that she diagnosed A.B. as being "status post assault rape," despite the lack of any physical evidence to confirm the diagnosis. (J.A. 217-18.)

The jury convicted Suarez on both counts. Following his conviction, Suarez appealed to the Appellate Division of the District Court of the Virgin Islands, which affirmed both of his convictions. *See Suarez v. Gov't of the V.I.*, 48 V.I. 492, 502 (D.V.I. App. Div. 2006). Suarez then appealed to the United States Court of Appeals for the Third Circuit, which reversed his first degree rape conviction but affirmed the aggravated rape conviction.[2] *Gov't of the V.I. v. Suarez*, 242 Fed. Appx. 845, 852-53 (3d Cir. 2007) (unpublished). Having exhausted his direct appeals, on November 20, 2007, Suarez petitioned the Superior Court for a writ of

---

[1] A.B. testified that she knew what a penis was through showers with her father and brother when she was younger.

[2] In his direct appeal to both the Appellate Division and the Third Circuit, Suarez raised ineffective assistance of counsel, but both courts declined to address the issue in order to permit it to be raised and addressed on a petition for a writ of habeas corpus.

habeas corpus, claiming ineffective assistance of counsel. On September 29, 2009, the Superior Court determined that while Suarez's counsel's performance had been deficient, the trial was still fundamentally fair, and thus denied the writ. On October 6, 2009, Suarez timely appealed the denial of the petition to this Court and argues, as he did before the Superior Court, that he received ineffective assistance of counsel at his trial.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over this civil appeal pursuant to title 4, section 32(a) of the Virgin Islands Code, which provides that "[t]he Supreme Court shall have jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." An order denying a petition for a writ of habeas corpus is a final order in a civil proceeding from which an appeal may lie. *See Mendez v. Gov't of the V.I.*, S. Ct. Civ. No. 2009-0084, 2012 V.I. Supreme LEXIS 7, at *8-9, *11 (V.I. Jan. 18, 2012). The only issue raised in this appeal, ineffective assistance of counsel, is a legal issue and thus our review is plenary.[3] *See St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007).

## III. DISCUSSION

Suarez makes three arguments on appeal, all targeted towards showing that his trial lawyer provided constitutionally ineffective assistance of counsel by (1) failing to object to the admission of Dr. Astran's expert opinion, (2) failing to object to questions by the People suggesting that Suarez had taken steps to prevent S.S. from being interviewed by the police during the investigation, and (3) failing to call Nancy Bryan, A.B.'s grandmother, who would have rebutted A.B.'s testimony that the object in her mouth went from "soft to hard" by testifying that A.B. originally told her, before spending time with her father, that the object was always soft.

Proving ineffective assistance of counsel presents a high bar. First, to successfully raise the issue of ineffective assistance of counsel, Suarez must prove that his trial counsel's performance " 'fell below an objective

---

[3] The Superior Court did not hold an evidentiary hearing to determine the merits of the claims presented in the Petition, but instead ruled based on the parties' written submissions.

standard of reasonableness.' " *Corraspe v. People*, 53 V.I. 470, 479 (V.I. 2010) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)). However, "[t]actical decisions about which competent counsel might disagree do not qualify as objectively unreasonable." *Ibrahim v. Gov't of the V.I.*, S. Ct. Civ. No. 2007-76, 2008 V.I. Supreme LEXIS 20, at *2 (V.I. Jan. 18, 2008) (unpublished) (citing *Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)). Indeed, we must "indulge a 'strong presumption' that counsel's conduct falls within a wide range of reasonable professional assistance." *Bell*, 535 U.S. at 702. Next, even if we determine that trial counsel's conduct fell outside the zone of reasonable professional assistance, Suarez must also affirmatively prove that his counsel's conduct prejudiced him in the proceeding so that there is a " 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Corraspe*, 53 V.I. at 479-80 (quoting *Hill*, 474 U.S. at 57).

Accordingly, we must first determine whether Suarez's trial attorney's representation fell below the objective standard of reasonable professional assistance.

### A. The Superior Court correctly found that Suarez's trial counsel's failure to object to Dr. Astran's testimony fell below a reasonable standard of professional assistance.

Suarez argues that his trial counsel provided ineffective assistance because counsel failed to object to Dr. Astran's purportedly irrelevant and inadmissible testimony. The Superior Court ruled that trial counsel's performance in this regard fell below a reasonable standard of professional assistance. We agree.

At trial, Dr. Astran was qualified as an expert in the field of medicine. She testified that she took A.B.'s medical history, including the story of the assault, not from A.B., but from A.B.'s parents because A.B. did not want to discuss the matter. Dr. Astran also testified that there was no physical evidence of a sexual assault but that a sexual assault case involving oral penetration is unlikely to produce physical evidence unless there was "a large amount of violence." (J.A. 212-13.) Despite the lack of physical evidence, Dr. Astran testified that she diagnosed A.B. as being "status post assault rape" and suffering an emotional trauma based only on A.B.'s parents' recounting of the event. (J.A. 217-18.)

In *People v. Todmann*, 53 V.I. 431, 437-40 (V.I. 2010), we determined that an expert's opinion was admissible in a criminal trial under 5 V.I.C. § 911[4] so long as it was relevant. We concluded, as part of the relevancy requirement, that an expert's testimony must be based on the specialized knowledge which the expert possessed. To determine if an expert's testimony was based on specialized knowledge, a court must probe "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (discussing a similar requirement under the federal rules of evidence). The purpose of that determination is to ensure that when experts "testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 319 (7th Cir. 1996). Courts consider a patient's medical history, including subjective complaints, to be a sound basis for a medical expert's diagnosis in some instances. *See, e.g., Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1020 (7th Cir. 2000) (permitting of admission of medical expert testimony as to the cause of an injury based on subjective complaints). The United States Supreme Court has warned, however, that there is nothing that requires a trial court "to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997).

In this case, Dr. Astran's conclusion that A.B. was sexually assaulted and suffered emotional trauma was not based on any specialized

---

[4] Section 911(2) of title 5 stated that

> If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing and (b) within the scope of the special knowledge, skill, experience, or training possessed by the witness.

This section, and in fact all of the evidentiary sections in the Virgin Islands Code referenced in this opinion, were repealed subsequent to Suarez's trial and the Federal Rules of Evidence are now used in the Superior Court. *See* Act of Apr. 7, 2010, 28th Leg., Act No. 7161, § 15, Bill No. 28-0180. Regardless, because Suarez was tried while 5 V.I.C. §§ 771-956 were in force, it is to those sections we turn in this appeal. *See Blyden v. People*, 53 V.I. 637, 658, n. 15 (V.I. 2010).

knowledge as required by section 911(2). Dr. Astran acknowledged that there was no physical evidence on which she could rely. The only existing data that supported Dr. Astran's testimony that A.B. was sexually assaulted and emotionally traumatized was the second-hand story told to her by individuals who were not present at the time of the incident. Additionally, it is not clear that, as a medical doctor rather than a psychologist, Dr. Astran was qualified to provide a diagnosis of "emotional trauma." It is clear, however, that Dr. Astran's methodology in this case did not adhere to the intellectual rigor demanded of doctors in diagnosing illness and that there is a significant gap between the data, the second-hand retelling, and the conclusion, that A.B. had been sexually assaulted and suffered an emotional trauma. Therefore, because Dr. Astran's testimony was not based on any specialized knowledge, by failing to object to this irrelevant and inadmissible testimony, Suarez's trial counsel's performance fell below a reasonable standard of professional assistance.

**B. The Superior Court correctly found that Suarez's trial counsel's failure to object to the People's questions eliciting evidence concerning Suarez's motive to hamper investigators' questions of S.S. also fell below a reasonable standard of professional assistance.**

Suarez next argues that his trial attorney's failure to object to the People's questions and argument concerning Suarez's alleged attempts to prevent investigators from speaking to S.S. fell below the reasonable standard of professional assistance and, accordingly, constituted ineffective assistance. At trial, Suarez's counsel did not object when the People questioned Suarez and his fiancée about their alleged attempts to prevent investigators from speaking to S.S. about the incident in question. Additionally, counsel likewise failed to object when the People argued in their closing that Suarez wanted to prevent S.S. from speaking to investigators because he was guilty and trying to hide evidence. The Superior Court ruled that trial counsel's conduct was deficient on this point because the questions and argument were irrelevant to whether Suarez sexually assaulted A.B.

Under 5 V.I.C. § 777(f), all relevant evidence was admissible. Relevant evidence was defined at 5 V.I.C. § 771(2) as "evidence having any tendency in reason to prove any material fact." Whether Suarez, or his

fiancée, took any actions to initially stall or prevent the investigators from interviewing S.S. had absolutely no tendency to prove or disprove any fact related to the accusations of sexual misconduct leveled at Suarez. As the Superior Court adroitly pointed out: "Petitioner was charged with 'First Degree Rape' and 'Aggravated Rape' rather than 'Obstructing Justice.' Neither 'First Degree Rape' nor 'Aggravated Rape' can be proven by testimony concerning whether Petitioner and his fiancée allowed their daughter to be interviewed. Such testimony is therefore devoid of any probative value." (J.A. 20.) On appeal, the People concede that on this point Suarez's trial counsel's conduct fell below the reasonable standard of professional assistance. (Appellee Br. 13.) Both Suarez and the People are correct that these questions and the answers to them were not relevant under 5 V.I.C. §§ 771 & 777, and were thus inadmissible. Accordingly, we conclude that trial counsel's failure to object to the People's irrelevant questions, and to the People's argument later premised on those questions, fell below the reasonable standard of professional assistance constitutionally guaranteed to Suarez.

### C. The Superior Court correctly found that trial counsel's failure to call Nancy Bryan did not fall below a reasonable standard of professional assistance.

Finally, Suarez argues that his trial counsel was deficient for failing to call Nancy Bryan, A.B.'s grandmother and the mother of Suarez's fiancée, who would have testified that A.B. initially told her that the object Suarez put in her mouth was soft the entire time. In Bryan's affidavit attached to the petition for a writ of habeas corpus, she states that she would have testified that "I asked [A.B.] whether what Mr. Suarez placed in her mouth was soft or hard. [A.B.] said it was soft. I asked [A.B.] many times whether what Mr. Suarez placed in her mouth was soft or hard, and [A.B.] always said that what was placed in her mouth was soft." (J.A. 594.) Suarez argues that this evidence would have rebutted A.B.'s testimony that the object went from "soft-to-hard" and thus would have undermined the People's entire case. The Superior Court ruled that counsel's decision was not deficient in this regard, and we agree.

An attorney's performance is only defective for failure to investigate or call a witness where the witness's testimony would have "provided a viable defense." *Carillo v. United States*, 995 F. Supp. 587, 591, 38 V.I. 258 (D.V.I. 1998). Indeed, "a particular decision not to

investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland v. Washington*, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Where trial counsel may have had "reason to believe that pursuing investigations would be fruitless or even harmful," the decision not to investigate cannot "later be challenged as unreasonable." *Id.*

■ First, looking at the circumstances of this case, we note that, contrary to Suarez's contention, Nancy Bryan's testimony would not have been particularly effective in bolstering Suarez's defense or impeaching A.B.'s claims. Suarez's primary defense at trial was that it was a banana, and not his penis, that he placed in A.B.'s mouth. Nancy Bryan's testimony, that A.B. told her that the item placed in her mouth was soft the entire time, would somewhat bolster Suarez's argument and somewhat impeach A.B.'s testimony as a prior inconsistent statement. However, Nancy Bryan's testimony would not have impeached or in any way negated A.B.'s testimony that: (1) she believed it was Mr. Suarez's penis, (2) the object began small and grew larger while in her mouth, (3) she felt hairs on her face, (4) she witnessed a white substance on his shorts after the blindfold was removed, and (5) the object did not taste like any food. (J.A. 162-67.) Given the circumstances of this case, and applying the requisite "heavy measure of deference to counsel's judgments," *Strickland*, 466 U.S. at 691, it was reasonable for Suarez's trial counsel to decline to call Nancy Bryan, given the relatively small value of her testimony.

Additionally, we find that trial counsel may have been given reason to believe that calling Nancy Bryan would have been fruitless or even harmful. According to Bryan's affidavit, Suarez's trial counsel was aware that Nancy Bryan was willing to testify to the "soft-only" theory. Had trial counsel impeached A.B. with this relatively weak prior inconsistent statement, it would have opened the door to every prior consistent statement as now being non-cumulative, admissible hearsay to support A.B.'s credibility. *See* 5 V.I.C. §§ 834 & 932(1).[5] Trial counsel could have reasonably inferred that, because only one relative who had

---

[5] 5 V.I.C. § 834 stated

> Subject to sections 835 and 836 of this title, for the purposes of impairing or supporting the credibility of a witness, any party including the party calling him may examine him

been told A.B.'s story was willing to refute it, the rest would support A.B.'s story and, therefore, he had reason to believe that putting Nancy Bryan on the stand to testify would do much more harm than good, by forcing the jury to subsequently hear the graphic story of A.B.'s assault again and again from each family member. Accordingly, under the *Strickland* test, the Superior Court correctly determined that trial counsel's failure to call Nancy Bryan was a tactical decision that fell within the broad range of reasonable professional assistance.

### D. The Superior Court correctly found that Suarez suffered no prejudice on account of trial counsel's deficient performance.

Suarez argues that the cumulative effect of trial counsel's deficient performance "renders trial counsel's performance the antithesis of what is required under the Sixth Amendment" and that "[t]he prejudicial effects of these errors sealed Suarez's fate and resulted in his convictions." (Appellant Br. 28.) The Superior Court, however, found that trial counsel mitigated his errors by repeatedly pointing out to the jury the weak basis for Dr. Astran's opinion and the irrelevance of the questions concerning Suarez's alleged attempts to frustrate investigators from interviewing S.S. Therefore, the Superior Court held that Suarez failed to meet his burden to show that there was a reasonable probability that without trial counsel's errors, the result of the proceeding would have been different. We conclude that the Superior Court was correct.

"It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have

---

and introduce extrinsic evidence concerning any conduct by him and any other matter relevant upon the issues of credibility.

While the general hearsay rule excludes out-of-court statements offered for the truth of the matter they assert, 5 V.I.C. § 932(1) codified an exception allowing admission of:

*Previous statements of persons present and subject to cross-examination.* A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness.

*See also* 14 V.I.C. § 19 (codifying a similar exception to the hearsay rule for prior inconsistent statements).

influenced the outcome undermines the reliability of the result of the proceeding." *Id.* (citation omitted). Instead, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Additionally, we must assume that the jury "acted according to law," which means that the jury was "reasonably, conscientiously, and impartially applying" the jury instructions. *Id.* at 694-95. Finally, we must consider the "totality of the evidence before the jury" to determine whether the error had a "pervasive effect on the inferences to be drawn from the evidence." *Id.* at 695-96.

■ Turning first to the prejudice Suarez suffered due to his trial counsel's failure to object to Dr. Astran's conclusion that A.B. was sexually assaulted, the potential prejudice of that testimony, at least in isolation, was very high. Dr. Astran's medically unsupported conclusion that A.B. was sexually assaulted put the weight of her expert credentials behind A.B.'s claim. However, trial counsel took immediate and substantial steps to mitigate whatever prejudice may have been caused by his failure to object. First, on cross examination, trial counsel received concessions from Dr. Astran that her diagnosis was based solely on the second hand recounting by A.B.'s parents.[6] Second, during closing arguments, trial counsel extensively pointed out the flaws in Dr. Astran's

---

[6] During cross examination, trial counsel and Dr. Astran had the following exchange:

Counsel: You made a statement that you had characterized this as being, in your report, as status post assault, right?

Dr. Astran: That is how the diagnosis reads on Page 1.

Counsel: And the only way that you know that there was any assault is not through the testimony of [A.B.], only through the parents, correct?

Dr. Astran: The history was given by the parents.

Counsel: So to answer any question directly, you made that determination based solely on, upon what you were told by the parents, correct?

Dr. Astran: Based on the history, yes, sir.

. . .

Counsel: Notwithstanding all of this lengthy education on what you might or might not expect to find, you did not find any physical evidence at all. Did you?

Dr. Astran: There was none expected to be found.

(J.A. 217-19.)

testimony to the jury.[7] Finally, the jury was specifically instructed to treat expert testimony "like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves . . . ." (J.A. 550.) In light of these facts, the prejudice from trial counsel's deficient performance in failing to object to this testimony was largely mitigated.

■ Next, we turn to the prejudicial impact of trial counsel's failure to object to the questions and argument concerning Suarez's alleged refusal to initially allow investigators to question S.S. We recognize that there is potential prejudice from trial counsel's deficient performance — a juror could potentially conclude that Suarez interfered with the investigation because he was guilty and trying to evade a successful prosecution. In this instance, however, the actual prejudice to Suarez was minimal. First, Suarez's fiancée presented a reasonable explanation to the allegation — she objected to the fact that the subpoena required her four year old daughter, S.S., to meet with the police in the police station.[8] Additionally, the People's own witness, Detective Harris, indicated that Susie Bryan, Suarez's fiancée, cooperated with him throughout the investigation. Finally, and most importantly, in closing arguments Suarez's trial counsel carefully explained to the jury that (1) it was only Susie Bryan, and not

---

[7] Trial counsel's closing remarks included the following:

> Frankly, I don't care about Dr. Astran and I'll tell you why. Dr. Astran may have a list of credentials, you know, a page long. But in the final analysis, Dr. Astran, she found nothing. Now, she says, oh, I didn't find anything because you wouldn't find anything. Well, okay. So what does that prove? The bottom line is you found nothing. You didn't.
>
> She did not take a history as is customary in these situations. She didn't take a history from the child . . . . So she got secondhand story. She did not get the — she did not take the time or was not professional enough to get the story notwithstanding their [sic] being concerns about her being upset. She thought [sic] to have verified the story from the girl herself. She didn't do that. So basically she did — all she did was run some swabs in the child's throat, check for various, whether it is venereal disease and that's it. Anything beyond that is nothing more than speculation.

(J.A. 505-06.)

[8] During cross examination with the government attorney, Susan Bryan, Suarez's fiancée, testified to the following:

> Ms. Bryan: I had nothing to hide. And they wanted me, a four year old, and want me to bring her into the police station as opposed to the parent's house.
>
> People's Counsel: You know the arrangement they were going to take her to the police station and KidsCope to see her there, not to the police station?
>
> Ms. Bryan: But for a four year old to be going into a police station was terrifying.

(J.A. 339.)

Suarez, who took any action regarding S.S.'s participation in the investigation, and (2) the entire issue surrounding S.S.'s participation in the investigation was irrelevant to the jury's decision on whether or not Suarez committed a sexual assault. In light of these facts, the Superior Court correctly determined that any prejudice suffered from trial counsel's deficient performance in failing to object to the People's questions surrounding S.S.'s interview was significantly reduced.

 With that reduced prejudice in mind, we now turn to the totality of the evidence to determine whether or not trial counsel's actions had a pervasive effect on the evidence before the jury. *See Strickland*, 466 U.S. at 695-96. We conclude that it did not. In this case, there was no dispute that on July 31, 2002, Suarez was babysitting A.B. and S.S., and that they played a "tasting game" in which both girls were blindfolded. In fact, the parties agreed on everything that happened on July 31, 2002, except one issue. That issue turned out to be the critical determination the jury was required to make: what went into A.B.'s mouth. A.B. unequivocally testified that she believed it was Suarez's penis in her mouth based on its taste and feel. A.B. also testified that the item in her mouth got larger while in her mouth and she felt hairs on her face. Suarez attempted to deflect A.B.'s testimony by claiming the item was a banana. Suarez has failed to carry his burden of convincing this Court that there is a reasonable probability that the jury's weighing of this evidence would have been different but for Suarez's trial counsel's failure to have excluded Dr. Astran's discredited testimony or the irrelevant questions about S.S.'s interview. Because Suarez has failed to meet his burden of showing that there is a reasonable probability that but for trial counsel's deficient performance, the result of his trial would have been different, we affirm the Superior Court's denial of his petition.

## IV. CONCLUSION

We agree with the Superior Court that Suarez's trial counsel's performance fell below a reasonable standard of professional assistance in failing to object to Dr. Astran's testimony and the People's questions concerning the events leading up to the interview with S.S. However, Suarez failed to carry his burden of convincing this Court that there was a reasonable probability that his trial counsel's deficiencies "undermine[d] the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693. Therefore, we affirm the Superior Court's September 29, 2009 Order denying Suarez's petition for a writ of habeas corpus.