**CHRISTOPHER SIMMONDS, Appellant/Defendant**

**v.**

**PEOPLE OF THE VIRGIN ISLANDS, Appellee/Plaintiff**

S. Ct. Criminal No. 2012-0074

Supreme Court of the Virgin Islands

August 13, 2013

481

482

KELE C. ONYEJEKWE, ESQ., Appellate Public Defender, St. Thomas, USVI, *Attorney for Appellant*.

PAUL J. PAQUIN, ESQ., Deputy Solicitor General, St. Thomas, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

### (August 13, 2013)

HODGE, *Chief Justice*. Appellant Christopher Simmonds appeals from the Superior Court's August 15, 2012 Judgment, which adjudicated him guilty of first-degree murder and various other offenses. For the reasons that follow, we affirm.

## I. STATEMENT OF RELEVANT FACTS AND PROCEDURAL POSTURE

On June 29, 2010, the People of the Virgin Islands filed an information charging Simmonds with first-degree murder and other offenses stemming from the shooting death of Cedric Rouse on April 5, 2009. Prior to trial, Simmonds filed a motion requesting that the jury visit the crime scene, which the People opposed. During an in-chambers hearing prior to the start of jury selection on June 11, 2012, the Superior Court, while

addressing several pre-trial matters, orally denied Simmonds's jury site view motion. The Superior Court memorialized that decision in a June 13, 2012 Opinion, which explained that Simmonds failed to provide sufficient reasons for a visit and did not confirm that the crime scene was in substantially the same condition as it was on the date of the incident.

Simmonds's trial began on June 12, 2012. The People called as its first witness John Stevens, who testified that he saw Simmonds shoot Rouse with a firearm. (J.A. 314-18.) Stevens testified that he observed the incident while driving a car while his son rode as a passenger. (J.A. 314-15.) In addition to various law enforcement witnesses, the People also called Kelvin Edmeade, who testified that he had heard shots fired that afternoon, but did not see the shooter. (J.A. 622.) When asked if he had provided a written statement to Delbert Phipps, Sr., a police corporal, that he had seen the shooter, Edmeade admitted to signing and dating a statement, but denied telling Phipps that he saw who fired the shots. The prosecutor provided a copy of that statement to Edmeade, who acknowledged his signature, but testified that he never identified the shooter and had simply signed the document without reading it so that Phipps would stop talking to him. (J.A. 627.) Over Simmonds's objection, the Superior Court permitted the People to admit the written statement as substantive evidence pursuant to title 14, section 19 of the Virgin Islands Code. Shortly thereafter, the People called Phipps as a witness, and he explained how he questioned Edmeade, and stated that, in addition to providing the statement, Edmeade had selected Simmonds out of a photo array. (J.A. 714.)

On June 14, 2012, the jury found Simmonds guilty of first-degree murder, first-degree assault, and two counts of unauthorized use of a firearm during commission of a crime of violence, with first-degree murder and first-degree assault as the predicate offenses. The Superior Court orally sentenced Simmonds on August 7, 2012. However, prior to sentencing, the Superior Court received a *pro se* document from Simmonds, captioned "Emergency Petition for Injunctive Relief to Acquit or Alternatively Vacate or Set Aside Jury Verdict Under Miscarriage of Justice/Failure of Justice," which challenged his convictions on numerous grounds. At sentencing, the Superior Court acknowledged the document, construed it as a motion for a new trial pursuant to Superior Court Rule 135, and denied it as untimely because it had not been filed within 10 days of June 14, 2012 — the day the jury announced its guilty verdict. The

Superior Court then proceeded to sentence Simmonds, including imposing a mandatory sentence of life without parole for the first-degree murder charge.

The Superior Court entered a written order denying Simmonds's *pro se* motion on August 15, 2012, and memorialized its sentence in an August 15, 2012 Judgment. The Superior Court invoked section 104 of title 14 of the Virgin Islands Code to stay execution of Simmonds's sentences for first-degree assault and its corresponding firearms charge. Simmonds timely filed his notice of appeal on August 3, 2012.[1]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

Title 4, section 32(a) of the Virgin Islands Code gives this Court "jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." The written judgment embodying the adjudication of guilt and the sentence imposed based on that adjudication constitutes a final judgment. *See, e.g., Jackson-Flavius v. People*, 57 V.I. 716, 721 (V.I. 2012) (citing *Potter v. People*, 56 V.I. 779, 787 (V.I. 2012)). Therefore, this Court possesses appellate jurisdiction over this appeal.[2]

"Ordinarily, the standard of review for this Court's examination of the Superior Court's application of law is plenary, while findings of fact are reviewed for clear error." *Rawlins v. People*, 58 V.I. 261, 267-68 (V.I. 2013) (quoting *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). However, the Superior Court's decision to admit evidence, to allow jurors to view objects or scenes outside of the courtroom, or to impose a certain sentence is reviewed solely for abuse of discretion unless the Superior Court bases its decision on application of

---

[1] "A notice of appeal filed after the announcement of an order or judgment, but before the entry of a writing memorializing the same, is treated as filed on the date of and after such entry . . . and is considered timely filed." *Potter v. People*, 56 V.I. 779, 787 n.10 (V.I. 2012) (internal quotation marks omitted). *See also* V.I.S.CT.R. 5(b)(1).

[2] In his appellate brief, Simmonds appears to contend that this Court lacks jurisdiction over this appeal because the Superior Court stayed execution of the sentence of some of his convictions in conformance with section 104 of title 14 of the Virgin Islands Code. This Court previously addressed, and rejected, this very same issue in *Williams v. People*, 58 V.I. 341, 346 (V.I. 2013).

legal precepts, in which case review is plenary. *See, e.g., Williams v. People*, 58 V.I. 341, 350 (V.I. 2013) (citing *Cheatham v. People*, S. Ct. Crim. No. 2008-0026, 2009 V.I. Supreme LEXIS 22, *4 (V.I. Mar. 27, 2009) (unpublished)); *Potter*, 56 V.I. at 791 n.15; *Christopher v. People*, 57 V.I. 500, 509 (V.I. 2012) (citing *Ritter v. People*, 51 V.I. 354, 359 (V.I. 2009)).

When reviewing a challenge to the sufficiency of the evidence supporting a conviction, we view all issues of credibility in the light most favorable to the People. *Latalladi v. People*, 51 V.I. 137, 145 (V.I. 2009). If " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,' " this Court will affirm. *DeSilvia v. People*, 55 V.I. 859, 865 (V.I. 2011) (quoting *Mendoza v. People*, 55 V.I. 660, 666-67 (V.I. 2011)). The evidence offered in support of a conviction "need not be 'inconsistent with every conclusion save that of guilty, so long as it establishes a case from which a jury could find the defendant guilty beyond a reasonable doubt.' " *Mulley v. People*, 51 V.I. 404, 409 (V.I. 2009) (quoting *United States v. Carr*, 25 F.3d 1194, 1201 (3d Cir. 1996)). A defendant seeking to overturn his conviction on this basis bears " 'a very heavy burden.' " *Latalladi*, 51 V.I. at 145 (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir. 1982)).

However, when a criminal defendant fails to object to a Superior Court decision or order — as is the case with most of the issues Simmonds has raised on appeal — this Court ordinarily only reviews for plain error, provided that the challenge has been forfeited rather than waived. *See* V.I.S.CT.R. 4(h); *see also Francis v. People*, 52 V.I. 381, 390 (V.I. 2009). For this Court to reverse the Superior Court under the plain error standard of review, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.' " *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 466-67, 117 S. Ct. 1544, 137 L. Ed. 2d 718 (1997)). However, even "[i]f all three conditions are met," this Court may reverse the Superior Court "only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 390-91.

## B. Sufficiency of the Evidence

In his appellate brief, Simmonds challenges the sufficiency of the evidence for all four of his convictions. We address each offense in turn.

## 1. *First-Degree Murder*

■ Simmonds first argues that the People failed to prove that he acted willfully, deliberately, or with premeditation when he shot Rouse because "neither Steven[s] nor Edmeade could describe what caused the shooting." (Appellant's Br. 23.) Simmonds, however, conflates motive with criminal intent. As this Court has previously explained,

> [T]o premeditate a killing is to conceive the design or plan to kill. A deliberate killing is one which has been planned and reflected upon by the accused and is committed in a cool state of the blood, not in sudden passion engendered by just cause of provocation. It is not required, however, that the accused shall have brooded over his plan to kill or entertained it for any considerable period of time. Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill.

*Brown v. People*, 54 V.I. 496, 507 (V.I. 2010).

■ ■ At trial, Stevens testified that Simmonds shot Rouse and, after Rouse fell, he moved towards him and shot at him again, this time aiming above the neck.[3] (J.A. 317.) Dr. Francisco Landron, a medical examiner, corroborated Stevens's chronology by testifying that he performed an autopsy on Rouse's body that revealed he suffered five gunshot wounds: one to his left arm, one to his right arm, one to his buttocks, and two to the head. (J.A. 577-79.) From this testimony, the jury could infer that Simmonds possessed an opportunity to contemplate his actions: after firing his initial shots from a distance and causing potentially non-lethal wounds, Simmonds chose to move closer to Rouse and shoot him in the head, an area of the body where a gunshot wound would be far more likely to result in death. *See Codrington v. People*, 57 V.I. 176, 190 (V.I. 2012) (premeditation proved by testimony that defendant shot victim, then walked towards victim to fire a second shot). Therefore, the evidence

---

[3] Simmonds also argues that this Court should completely disregard Stevens's testimony and hold that he "is not credible as a matter of law," because it was purportedly "not possible to see so clearly while driving and taking care of his child who was a passenger" in his vehicle. (Appellant's Br. 19-20.) We find that the argument is wholly without merit, given that it is generally the province of the jury to determine the credibility of a witness. *See Christopher*, 57 V.I. at 514 ("[S]ufficiency challenges are not a forum to rehash credibility arguments that were unpersuasive to a jury.") (collecting cases).

was more than sufficient to sustain Simmonds's first-degree murder conviction.[4]

## 2. First-Degree Assault

Simmonds also argues that it is legally impossible to simultaneously convict him of both first-degree murder and first-degree assault. Relying primarily on the common law and decisions of courts in other jurisdictions, Simmonds contends that the People may only charge a defendant with first-degree assault pursuant to section 295(1) of title 14[5] — assault with intent to commit murder — if the victim does not die from his injuries; according to Simmonds, upon death, the People may only charge a defendant with a homicide crime.

█ However, we need not address Simmonds's concerns about the propriety of simultaneously charging and convicting a defendant of first-degree murder and first-degree assault for the same act. The information charging Simmonds with these offenses identified shooting Rouse with a firearm as the basis for the first-degree assault charge. (J.A. 21.) As explained above in the context of premeditation, the evidence

---

[4] In his appellate brief, Simmonds also argues that the Superior Court should have instructed the jury that it could only find him guilty of first-degree murder if the killing in this case is "the same kind of killing as by poison, lying in wait, torture or detonation of a bomb." (Appellant's Br. 21.) Although Simmonds acknowledges that this Court thoroughly analyzed — and rejected — this very same argument in *Codrington*, 57 V.I. at 185-86, and *Billu v. People*, 57 V.I. 455, 470-71 (V.I. 2012), he presents no argument as to why this Court should depart from those precedents. *See* V.I.S.CT. R. 22(m) ("Issues that . . . (3) are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority [] are deemed waived for purposes of appeal, except that the Supreme Court, at its option, may notice an error not presented that affects substantial rights."). To the extent Simmonds renews those arguments because the *Codrington* and *Billu* decisions were pending certiorari review by the United States Court of Appeals for thé Third Circuit, we note that the Third Circuit has since denied both petitions. *Gov't of the V.I. v. Codrington*, No. 12-4090 (3d Cir. Apr. 18, 2013); *Gov't of the V.I. v. Billu*, No. 12-4242 (3d Cir. Apr. 18, 2013).

[5] Section 295, which codifies the offense of first-degree assault, making it a felony if a person:

(1) with intent to commit murder, assaults another;

(2) with intent to kill, administers or causes to be administered to another, any poison or other noxious or destructive substance or liquid, and death does not result;

(3) with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another . . . shall be imprisoned not more than 15 years[.]

14 V.I.C. § 295. Thus, the plain language of the statute precludes simultaneously charging and convicting a defendant of both first-degree murder and first-degree assault if the assault charge is brought pursuant to section 295(2).

introduced at trial, when viewed in the light most favorable to the People, established that Simmonds shot at Rouse two separate times. Based on the testimony of Stevens and Landron, the jury could reasonably find that Simmonds committed first-degree assault when he fired his first volley of shots from a distance — resulting in wounds only to Rouse's arms and buttocks — and then initiated a second first-degree assault when he moved closer to Rouse and shot him in the head, which transformed into a first-degree murder once Rouse died from those injuries. Therefore, since the evidence established that Simmonds committed a first-degree assault separate and apart from the one that resulted in Rouse's death, we decline to decide, as part of this appeal, the broader question of whether section 295(1) implicitly requires that the victim survive his injuries.[6]

### 3. *Firearms Charges*

At trial, Karen Stout, a supervisor in the Firearms Division of the Virgin Islands Police Department in the District of St. Croix, testified that she performed a records check and determined that Simmonds lacked authorization to possess a firearm in the St. Croix District on April 5, 2009. (J.A. 435.) Similarly, Bernard Burke, a Firearms Division supervisor in the St. Thomas/St. John/Water Island District, testified that his records search revealed that Simmonds was not authorized to possess a firearm in that district. (J.A. 552-53.) Nevertheless, Simmonds argues that the People failed to establish that he violated section 2253(a) of title 14 because — according to Simmonds — the People were required to prove that the particular firearm used to commit the offenses was not registered. (Appellant's Br. 31.)

██ ██ Simmonds's argument lacks merit. While Simmonds cites to numerous cases for the general proposition that section 2253 criminalizes possessing or carrying unregistered firearms, Simmonds ignores the established law that, under Virgin Islands law, firearms licenses are issued to individuals, *see* 23 V.I.C. § 454, and those licenses are "not

---

[6] We recognize that the Virgin Islands Code defines assault as "attempt[ing] to commit a battery" or "mak[ing] a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery." 14 V.I.C. § 291; *see Ambrose v. People*, 56 V.I. 99, 103-04 (V.I. 2012). Thus, Simmonds could have also completed an assault simply by pointing the firearm at Rouse. *Phillip v. People*, 58 V.I. 569 (V.I. 2013). However, the information identified the act of actually shooting at Rouse as the basis for the first-degree assault charge. (J.A. 21.)

transferable." 23 V.I.C. § 457(1); *see Phillip v. People*, 58 V.I. 569, 589-90 (V.I. 2013). In other words, even if some other individual had received a license to carry or possess the firearm used to shoot Rouse, Simmonds was nevertheless prohibited from possessing and using that firearm without obtaining his own license to possess it. Thus, the People introduced sufficient evidence that Simmonds violated section 2253.

## C. Grand Jury

■ Simmonds also argues that his convictions should be vacated because the People charged him by filing an information rather than obtaining an indictment from a grand jury. This Court recently considered — and rejected — an identical argument:

> The Fifth Amendment prohibition that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury" does not apply to the unincorporated Territory of the Virgin Islands. *Bigby v. Gov't of the V.I.*, 125 F. Supp. 2d 709, 715-716 (D.V.I. App. Div. 2000); *see also Gov't of the V.I. v. Dowling*, 633 F.2d 660, 667, 17 V.I. 623 (3d Cir. 1980); *United States v. Ntreh*, 279 F.3d 255, 256 (3d Cir. 2002) ("[R]esidents of the Virgin Islands have no constitutional right to indictment by a grand jury."); *Rivera v. Gov't of the V.I.*, 375 F.2d 988, 991, 6 V.I. 155 (3d Cir. 1967) ("[T]he right of presentment by grand jury is merely a remedial right which is not among the fundamental rights which Congress in legislating for a territory not incorporated into the United States, such as the Virgin Islands, must secure to its inhabitants."). The Revised Organic Act provides that "all offenses against the laws of the Virgin Islands which are prosecuted . . . in the courts established by local law shall continue to be prosecuted by information, except such as may be required by local law to be prosecuted by indictment by grand jury." Revised Organic Act § 3, 48 U.S.C. § 1561. [The defendant] was prosecuted for violations of the laws of the Virgin Islands, in the Superior Court, which was established by local law. Therefore, he may be prosecuted by information unless a local law requires him to be prosecuted by grand jury. No local law exists which requires first degree murder, or any other charge against [the defendant], to be prosecuted by grand jury indictment. Therefore, the Superior Court did not

err by allowing [the defendant] to be prosecuted by information, rather than grand jury indictment.

*Codrington*, 57 V.I. at 195-96.

■■ Although Simmonds acknowledges our *Codrington* decision, he argues that the pertinent provision of the Revised Organic Act is itself inconsistent with the United States Constitution because it is "repugnant" to the Fifth Amendment and establishes a "separate but equal theory of United States citizenship." (Appellant's Br. 13, 15.) However, as Simmonds recognizes in his appellate brief, the Supreme Court of the United States has long held that the grand jury clause does not apply to the states. (Appellant's Br. 15 (citing *Hurtado v. California*, 110 U.S. 516, 531, 4 S. Ct. 111, 28 L. Ed. 232 (1884)). While Simmonds correctly observes that "the Virgin Islands is not a state" and that "[t]he United States and the United States Virgin Islands *is* one sovereign," (Appellant's Br. 15), he ignores that a latter provision in section 3 of the Revised Organic Act provides that

> The following provisions of and amendments to the Constitution of the United States are hereby extended to the Virgin Islands to the extent that they have not been previously extended to that territory *and shall have the same force and effect there as in the United States or in any State of the United States*: . . . the first to ninth amendments inclusive . . . .

48 U.S.C. § 1561 (emphasis added). This provision, combined with the earlier portion of section 3 that explicitly authorizes prosecution by information, evinces an intent by Congress for the Fifth Amendment to have the same effect in the Virgin Islands as it does in the states. *Ward v. People*, 58 V.I. 277, 284 (V.I. 2013) (observing that "Congress enacted the 1968 amendment to the Revised Organic Act to mandate that the Fifth Amendment 'have the same force and effect' in the Virgin Islands 'as in the United States or in any State of the United States' "). Thus, because the Grand Jury Clause does not apply to the states, it likewise does not apply to this Territory. Consequently, the Superior Court committed no error — let alone plain error — when it allowed the People to charge Simmonds by information rather than grand jury indictment.[7]

---

[7] We emphasize that our decision herein should not be construed as a holding that initiating first-degree murder prosecutions by information is somehow better than obtaining an in-

## D. Motion to Visit Crime Scene

 According to Simmonds, the Superior Court abused its discretion when it denied his motion to allow the jury to visit the crime scene. Specifically, Simmonds argues that the photographs and diagrams admitted into evidence were inadequate, and that other than a site visit, "[t]here was no way to acquaint the jury with whether Steven[s] could see through the bins around the Department of Human Services." (Appellant's Br. 19.) Simmonds, however, has not provided this Court with copies of any of the photographs or diagrams that were introduced into evidence at his trial. Consequently, this Court possesses an insufficient basis to evaluate his argument that the materials introduced at trial were inadequate. *See Potter*, 56 V.I. at 791 (argument that judge should have permitted jury to view automobile owned by defendant's sister waived on appeal due to failure to provide relevant record to enable appellate review). In any event, we would find no basis for holding that the trial judge abused his considerable discretion, given that the Superior Court correctly noted that Simmonds's cursory motion, consisting of only a single paragraph with no citation to legal authority (J.A. 1082), made no attempt to explain how or why a site visit would benefit the jury's consideration of this case.

## E. Edmeade's Prior Inconsistent Statement

Simmonds also contends that the Superior Court erred when it admitted Edmeade's written statement to the Virgin Islands Police Department into evidence as a prior inconsistent statement. At trial, Simmonds had objected to the document's admission, but the Superior Court overruled the objection on the grounds that it was admissible under section 19 of title 14. (J.A. 630-31.) However, in his appellate brief, Simmonds does not argue that section 19 has been implicitly repealed by Act No. 7161, which repealed the local Uniform Rules of Evidence ("URE") and

---

dictment from a grand jury. As we stated in *Codrington*, section 3 of the Revised Organic Act expressly vests the Legislature with the power to enact local laws requiring prosecution by grand jury indictment for whatever offenses the Legislature deems fit. 57 V.I. at 196 (quoting 48 U.S.C. § 1561). As with all policy matters entrusted to the Legislature, this Court must defer to the Legislature's decision not to enact such a law. Consequently, any decision to adopt a grand jury system in the Virgin Islands must be made by the Legislature, rather than by this Court.

replaced it with the Federal Rules of Evidence. Instead, Simmonds argues that Edmeade's statement should have been excluded because the requirements of section 19 were purportedly not met, in that he could not cross-examine Edmeade on the subject matter of his testimony and the prior statement, since Edmeade repudiated the statement and testified that he had not been present when the shooting occurred.

 The unusual procedural situation in this case — a timely objection to admission of Edmeade's prior inconsistent statement by Simmonds at trial, but an appellate argument challenging the decision to admit Edmeade's prior statement on completely different grounds — complicates this Court's review of the trial court's decision to admit the statement. This Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law. *See, e.g., Rohn v. People*, 57 V.I. 637, 643 (V.I. 2012); *Rawlins*, 58 V.I. at 269 n.3. Significantly, this Court, in prior cases, has identified the correct rules of evidence notwithstanding the parties' agreement that different rules applied. *See, e.g., Phillips v. People*, 51 V.I. 258, 273 (V.I. 2009). However, Simmonds's decision to stipulate to section 19's applicability also results in the issue being waived. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . raised or objected to but not briefed . . . are deemed waived for purposes of appeal, except that the Supreme Court, at its opinion, may notice an error not presented that affects substantial rights."). Therefore, as in prior cases involving section 19,[8] this Court has been forced to

---

[8] Previously, this Court applied section 19 to two cases where the underlying criminal trials occurred prior to the effective date of Act No. 7161. *See, e.g., Suarez v. Gov't*, 56 V.I. 754, 764 n.5 (V.I. 2012); *Ramirez v. People*, 56 V.I. 409, 423-24 & n.9 (V.I. 2012). In four cases tried after Act No. 7161 went into effect, this Court noted the tension between section 19 and Federal Rule of Evidence 801(d)(1)(A), but never resolved the question on the merits. In *Fontaine v. People*, 56 V.I. 571, 585 n.9 (V.I. 2012), this Court recognized the conflict between these provisions, but declined to resolve the issue because the appellant's counsel had explicitly withdrawn the issue at oral argument. When the issue arose again in *Williams v. People*, 56 V.I. 821, 827-28 & n.6 (V.I. 2012), this Court again declined to resolve the tension because — as in this case — the appellant conceded that section 19 remained in effect, and the second prong of the plain error test would preclude reversal under the plain error standard of review. And in *Billu*, where both parties stipulated to Rule 801(d)(1)'s applicability without referencing section 19, this Court again explicitly stated that it had never decided the issue, and essentially decided the matter by analyzing the question under both provisions. 57 V.I. at 462-63 & n.5. Most recently, in *Frett v. People*, 58 V.I. 492, 504 (V.I. 2013), we declined to reach the issue because, despite the trial judge's invocation of section 19, the statement would have been admissible as an admission by a party opponent.

choose between resolving a fundamental threshold issue — what law actually governs admission of the evidence the appellant claims was improperly admitted by the trial court — and honoring the waiver doctrine and its underlying policy considerations.

Nevertheless, this case differs from our prior section 19 appeals in one very important respect. At oral argument, this Court questioned the People's counsel as to whether section 19 or Federal Rule of Evidence 801(d)(1)(A) governs admission of prior inconsistent statements in criminal cases in Virgin Islands local courts. The People responded by explicitly stating that it would not take a position on the issue, and would defer to any determination by this Court with respect to which authority controls. As this Court has recently explained, "waiver is a judicially created doctrine that can itself be waived if the other party, in this case the Government, fails to assert the waiver and would suffer no prejudice from our reaching the issue." *Bryan v. Gov't of the V.I.*, 56 V.I. 451, 457 (V.I. 2012) (citing *Simpson v. Golden*, 56 V.I. 272, 281 n.6 (V.I. 2012)). Unlike *Bryan* — where the government simply failed to raise waiver — counsel for the People has explicitly consented to this Court resolving, once and for all, the issue of what law governs admission of prior inconsistent statements in a criminal case. And since we ultimately affirm Simmonds's conviction, the People suffer no prejudice from our decision to reach the merits. Consequently, we exercise our discretion to invoke the "waiver of waiver" doctrine and hold that the People have themselves waived any objection to this Court resolving this otherwise unpreserved issue.

Section 19 of title 14 provides, in relevant part that

> [e]vidence of a prior statement, oral or written, made by a witness is not made inadmissible by the hearsay rule if the prior statement is inconsistent with his testimony at a hearing or trial. . . . Such prior statement shall be admissible for the purpose of affecting the credibility of the witness or for proving the truth of the matter asserted therein if it would have been admissible if made by the witness at the hearing or trial.

14 V.I.C. § 19. Although enacted after the Legislature adopted the 1953 version of the URE and placed in title 14 rather than title 5, this provision is itself modeled after the 1953 version of URE 63(1), which provided that

> Evidence of a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated

is hearsay evidence and inadmissible except: (1) A statement previously made by a person who is present at the hearing and available for cross examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness.

In contrast, Federal Rule of Evidence 801 — first adopted by Congress in 1975, and most recently amended for style in 2011 — provides that "[a] statement that meets the following conditions is not hearsay: . . . The declarant testifies and is subject to cross-examination about a prior statement, and the statement . . . is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition." FED. R. EVID. 801(d)(1)(A).

At first glance, these provisions bear some superficial similarity to each other. For instance, both provisions mandate that the witness be available for cross-examination, and contemplate that a prior inconsistent statement may be considered as substantive evidence rather than only for impeachment.[9] However, they are far from identical. Rule 801(d)(1)(A) sets forth significantly more stringent requirements for the admission of prior inconsistent statements as substantive evidence. Section 19 authorizes admission of unsworn statements; in contrast, Rule 801(d)(1)(A) requires that the statement have been made under penalty of perjury. Moreover, not all sworn statements are admissible under Rule 801(d)(1)(A); the statement must have been made at a trial, deposition, hearing, or similar proceeding.

To illustrate the significance of these differences, a brief historical overview is warranted. Prior to the codification of written rules, the "rules of evidence developed through a series of discretionary rulings in individual cases which, in time, formed a body of precedent and established a formal rule." Leo A. Farhat & Richard C. Kraus, *Michigan's*

---

[9] Pursuant to Federal Rule of Evidence 801(c), "hearsay" is defined as "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to *prove the truth of the matter* asserted in the statement." (emphasis added). Consequently, a party may introduce a witness's prior inconsistent statement into evidence even if it does not meet the requirements of Rule 801(d)(1)(A) for the limited purpose of impeaching the witness's credibility. *See, e.g., United States v. Emor*, 573 F.3d 778, 784, 387 U.S. App. D.C. 309 (2009); *United States v. Tavares*, 512 F.2d 872, 874-75 (9th Cir. 1975).

*"Rape-Shield" Statute Questioning the Wisdom of Legislative Determinations of Relevance*, 4 COOLEY L. REV. 545, 557 (1987) (citing Judson F. Falknor, *Extrinsic Policies Affecting Admissibility*, 10 RUTGERS L. REV. 574 (1956)). During this period, the vast majority of jurisdictions followed what would become known as the "orthodox" rule with respect to prior inconsistent statements. *See California v. Green*, 399 U.S. 149, 154, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970) (noting that the orthodox view had been adopted by most states) (citing 3 J. WIGMORE, *Evidence* § 1018 (3d ed. 1940)); *United States v. Tavares*, 512 F.2d 872, 875 & n.6 (9th Cir. 1975) ("[T]he orthodox rule is the law of this circuit and every circuit.") (collecting pre-Federal Rules of Evidence cases from every federal court of appeals). "[U]nder this view, the statement may not be offered to show the truth of the matters asserted therein, but can be introduced under the appropriate limiting instruction to impeach the credibility of the witness who has changed his story at trial." *Green*, 399 U.S. at 154. This prohibition is premised on the view that holding otherwise "would allow men to be convicted on unsworn testimony of witnesses — a practice which runs counter to the notions of fairness on which our legal system is founded." *Bridges v. Wixon*, 326 U.S. 135, 153-54, 65 S. Ct. 1443, 89 L. Ed. 2103 (1945). Thus, many courts adopted the orthodox rule "because of the inherently questionable nature of prior statements, particularly those made to police officers under coercive circumstances." *State v. Spadafore*, 159 W. Va. 236, 220 S.E.2d 655, 662 (1975). However, many courts also modified the orthodox rule to establish an exception for situations "where the prior statements were themselves testimony before a grand jury or at a former trial," for the fact that the witness had been sworn under oath — and thus subject to prosecution for perjury — and had his statement transcribed by a court reporter greatly mitigated any concerns about fairness to the defendant or the unreliability of the prior statement. *United States v. De Sisto*, 329 F.2d 929, 933 (2d Cir. 1964).

The orthodox rule, although adopted by most courts, had been severely criticized and rejected by most legal academics of the time. *Green*, 399 U.S. at 154. "The academic criticism is based upon the inapplicability of the traditional hearsay rationale for excluding such statements because the witness is available for examination at trial." *Spadafore*, 220 S.E.2d at 661-62. In other words, opponents of the orthodox rule believed that, if the witness is "subject to cross-examination . . . . there [would be] ample

opportunity to test him as to the basis for his former statement," even if it had not been made under oath in a prior trial or similar proceeding. *Green*, 399 U.S. at 155 (quoting 3 WIGMORE § 1018).

In 1939, the American Law Institute, consistent with its attempts to harmonize conflicting state laws, sought to create a Model Code of Evidence. However, the drafting process was plagued by "[h]eated internal debates" that "began almost at once." Eileen A. Scallen, *Proceeding With Caution: Making and Amending the Federal Rules of Evidence*, 36 SW. U. L. REV. 601, 603 (2008). Ultimately, the drafters — consisting largely of evidence professors — endorsed numerous controversial provisions, including abolishing the orthodox rule and providing that all prior statements would be admissible if the declarant was present and subject to cross-examination. *People v. Malone*, 445 Mich. 369, 518 N.W.2d 418, 421 (1994) (discussing Model Code of Evidence Rule 503). When the American Law Institute published the Model Code in 1942, opposition was "loud and fierce," with the California Bar Association even alleging that the rules, if adopted, would "destroy the foundation upon which our structure for the administration of justice is founded." Scallen, 36 SW. U. L. REV. at 603 (internal quotation marks omitted). Consequently, not a single jurisdiction adopted the Model Code. *Id.*

Despite the failure of the Model Code, some continued to believe that there was value in both codifying evidentiary rules and ensuring their consistency throughout the nation. Therefore, the Commissioners of the National Conference on Uniform State Laws began to draft the URE. Unlike the American Law Institute, the drafters of the URE prioritized "acceptability" over "reform." Robert P. Mosteller, *Evidence History, the New Trace Evidence, and Rumblings in the Future of Proof*, 3 OHIO ST. J. CRIM. L. 523, 524 (2006). Nevertheless, the URE — initially released in 1953 — retained the Model Code's rejection of the orthodox rule, despite the orthodox rule's nearly universal acceptance among judges. But unlike the Model Code, a small number of jurisdictions eventually adopted the URE and its departure from the orthodox rule — including, eventually, the Virgin Islands. *See id.*

In response to judges and lawyers "struggling" with evidentiary issues in the federal system, Chief Justice Earl Warren, as Chair of the Judicial Conference of the United States, established a special committee to study the feasibility of adopting uniform evidentiary rules for federal court. 21

CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 5006 (2d ed. 1982). Based on that committee's favorable recommendation, Chief Justice Warren established an Advisory Committee to draft the Federal Rules of Evidence. *Id.* Like the drafters of the Model Code and the URE, the Advisory Committee rejected the orthodox rule, and provided in proposed Federal Rule of Evidence 801(d)(1) that any prior inconsistent statement could be used as substantive evidence. *United States v. Castro-Ayon*, 537 F.2d 1055, 1057 (9th Cir. 1976). Congress, however, explicitly rejected the Advisory Committee's proposal, and "passed a much more restrictive version of the rule" that mirrored the modified orthodox approach, in that prior inconsistent statements could be admitted as substantive evidence only if the prior statement had been "(1) given under oath; (2) subject to prosecution for perjury; and (3) given in a trial, hearing, or other proceeding." *Id.* (internal quotation marks omitted). *See* FED. R. EVID. 801(d) advisory committee's note (citing URE 63(1) and acknowledging Congress's rejection of its initial proposal).

This version of Federal Rule of Evidence 801(d)(1) went into effect on July 1, 1975, and has remained substantively unchanged since that day. In the nearly four decades since its adoption, the modified orthodox rule continues to hold widespread acceptance, and the approach endorsed by the Model Code and the 1953 version of the URE remains a minority rule. In fact, in 1999, the National Conference on Uniform State Laws amended the URE to conform to the Federal Rules of Evidence, including adopting Federal Rule of Evidence 801(d)(1)(A), nearly word for word, as URE 801(b)(1)(A).

Prior to April 7, 2010, all provisions of the 1953 version of the URE that had been adopted by the Legislature — regardless of whether they were placed in chapter 67 of title 5 or chapter 1 of title 14 — were in full force and effect in Virgin Islands local courts. *See Phillips*, 51 V.I. at 275. Thus, in all criminal trials that occurred before that date, section 19 of title 14, and not Federal Rule of Evidence 801(d)(1)(A), governed the admission of prior inconsistent statements. *See, e.g., Suarez v. Gov't of the V.I.*, 56 V.I. 754, 764 n.5 (V.I. 2012); *Ramirez v. People*, 56 V.I. 409, 423-24 & n.9 (V.I. 2012); *Newton v. Gov't of the V.I.*, 48 V.I. 349, 361 (D.V.I. App. Div. 2005). However, on April 7, 2010, the Governor signed

Act No. 7161 into law, of which section 15 reads, in its entirety, as follows:

> (a) **WHEREAS**, the Territory Adopted the Uniform Rules of Evidence ("URE") which were drafted in 1953 by the National Conference of Commissioners on Uniform State Laws ("NCCUSL") and approved by the American Bar Association; and
>
> **WHEREAS**, substantial revisions were made to the URE by NCCUSL in 1986 and 1999; and
>
> **WHEREAS**, the Territory has not amended its URE to reflect such revisions or to address the current trends in the law; and
>
> **WHEREAS**, the legal community and the Territory would greatly benefit from adopting the Federal Rules of Evidence which will alleviate the current ambiguity and discrepancies in the application of the law; Now, therefore,
>
> (b) Title 5, Virgin Islands Code, chapter 67, Admissibility of Evidence, Uniform Rules of Evidence, is hereby repealed and replaced with the Federal Rules of Evidence, Pub. L. [No.] 93-595, § 1, January 2, 1975, 88 Stat. 1926, and all subsequent amendments thereto.

Act No. 7161, § 15 (V.I. Reg. Sess. 2010).

 Since section 19 is found in chapter 1 of title 14, while section 15(b) of Act No. 7161 only states that it is repealing chapter 67 of title 5, for Federal Rule 801(d)(1)(A) to apply, this Court would have to hold that the Legislature implicitly repealed section 19. As this Court has previously recognized, "repeal by implication is generally disfavored," and reserved only for those cases where a clear and irreconcilable conflict exists between two enactments. *V.I. Public Servs. Comm'n v. V.I. Water & Power Auth.*, 49 V.I. 478, 486 (V.I. 2008). In the first — and only[10] — decision analyzing the conflict between Federal Rule of Evidence 801(d)(1)(A) and section 19 on the merits, a Superior Court judge concluded that "Act No. 7161 addresses the rules of evidence generally,"

---

[10] Although a few other courts have concluded that section 19 continues to govern prior inconsistent statements in criminal cases, none of these courts performed their own independent analysis of the question, but simply cited to the decision in *People v. Donastorg*, 54 V.I. 22, 36 (V.I. Super. Ct. 2010) for the proposition that Act No. 7161 did not implicitly repeal section 19. *See, e.g., Gov't of the V.I. v. Bellot*, 473 Fed. Appx. 123, 127 (3d Cir. 2012); *People v. Frett*, 55 V.I. 294, 304 (V.I. Super. Ct. 2011).

while "[section 19] specifically speaks to how prior inconsistent statements of witnesses may be used as evidence," and concluded that section 19 continued to control because "it is settled that specific statutory provisions take precedence over general provisions which cover the same subject matter." *People v. Donastorg*, 54 V.I. 22, 37 (V.I. Super. Ct. 2011).

██ ██ We disagree. Act No. 7161 is fundamentally different from section 4 of title 1 — providing for the common law to govern "in the absence of local laws to the contrary" — or Superior Court Rule 7, which calls for applying federal procedural rules to Superior Court proceedings "to the extent not inconsistent" with local court rules. Rather, Act No. 7161 provides that chapter 67 of title 5, dealing with the admissibility of evidence, is "hereby repealed *and replaced with* the Federal Rules of Evidence, Pub. L. [No.] 93-595, § 1, January 2, 1975, 88 Stat. 1926, and all subsequent amendments thereto." Act No. 7161, § 15(b) (emphasis added). In other words, Act No. 7161 does not direct that the Federal Rules of Evidence simply fill the gap whenever local evidentiary rules are silent; by providing that title 5, chapter 67 is "hereby repealed *and replaced with* the Federal Rules of Evidence," the Legislature enacted each and every one of the Federal Rules of Evidence as the evidentiary rules for Virgin Islands local courts without qualification, including Rule 801(d)(1)(A).[11] *See* 1A NORMAN J. SINGER & J.D. SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 22:25 & n.3 (7th ed. 2012) ("When a statute adopts the provisions of another statute by specific reference, the effect is as if the referenced statute had been incorporated into the adopting statute.") (collecting cases). In other words, as of the April 7, 2010 effective date of Act No. 7161, Federal Rule of Evidence 801(d)(1)(A) is just as much a part of Virgin Islands law as any other enactment passed by the Legislature and approved by the Governor. Therefore, rather than comparing section 19 of title 14 to Act No. 7161 in its entirety to determine which statute is more specific, the appropriate point of comparison is between section 19 and the specific provision in Act No. 7161 that is in conflict with the prior enactment: Rule 801(d)(1)(A). 1A SUTHERLAND § 22:25.

---

[11] In fact, had the Legislature desired for the Federal Rules of Evidence to form the same gap-filling function as the Federal Rules of Criminal Procedure and Federal Rules of Civil Procedure, it could have simply repealed chapter 67 of title 5, for Superior Court Rule 7 provides for application of the Federal Rules of Evidence in the absence of any inconsistent local laws.

■■■ Here, section 19 and Rule 801(d)(1)(A) are equally specific, in that both provisions purport to govern the admission of prior inconsistent statements in criminal cases. The provisions are also in irreconcilable conflict, since Rule 801(d)(1)(A) only permits the Superior Court to admit a prior inconsistent statement into evidence if the statement was made under oath in a trial, deposition, or similar proceeding, whereas section 19 contains no such limitation. Since the Legislature enacted section 19 in 1972, but adopted Rule 801(d)(1)(A) in 2010, the rules of statutory construction dictate that Rule 801(d)(1)(A), as the most recent enactment, controls. *See, e.g., In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 593 (5th Cir. 2008) ("[W]hen two statutes irreconcilably conflict, the more recent statute controls."); *People in the Interest of W.P.*, 295 P.3d 514, 519 (Colo. 2013) ("If we conclude that two applicable provisions are irreconcilable, we assume the [legislature] is aware of its prior enactments and deem the more recent statute to prevail over the older one."). *Accord McIntosh v. People*, 57 V.I. 669, 685 (V.I. 2012) ("repeal by implication . . . should occur only when the later statute expressly contradicts the original act") (quoting *V.I. Pub. Servs. Comm'n*, 49 V.I. at 486).

■■ ■■ Since this is a situation "where a conflict is readily seen by application of a later enactment," we need not consider legislative intent, since in the case of "irreconcilable conflict between . . . two acts, the latest legislative expression prevails." 1A SUTHERLAND § 23:9 & n.19 (collecting cases). Nevertheless, to the extent any doubt remains, we believe the findings the Legislature set forth in section 15(a) of Act No. 7161 demonstrate an intent to repeal section 19. The Legislature states that the National Conference amended the URE in 1986 and 1999, but that "the Territory has not amended its URE to reflect such revisions or to address the current trends in the law." As noted earlier, the approach codified in section 19 and former URE 63(1) not only remains a minority rule, but possesses far less support even among legal academics than in prior decades — as demonstrated by the fact that the 1999 version of the URE now mirrors Federal Rule 801(d)(1)(A). Additionally, the Legislature finds that "the legal community and the Territory would greatly benefit from adopting the Federal Rules of Evidence," without limitation. Moreover, the Legislature explicitly identifies "alleviat[ing] the current ambiguity and discrepancies in the application of the law" as one of the reasons it is adopting the Federal Rules of Evidence;

unquestionably, requiring attorneys and judges to scour through the Virgin Islands Code in search of isolated and scattered remnants of the 1953 version of the URE that may conflict with the Federal Rules of Evidence would not be consistent with this purpose.

██ ██ Consequently, we hold that Act No. 7161 implicitly repealed section 19, and that the Superior Court therefore committed error when it permitted the People to introduce Edmeade's prior unsworn inconsistent statement even though the requirements of Rule 801(d)(1)(A) had not been met. Nevertheless, the Superior Court's error does not warrant a new trial since his prior inconsistent statement is wholly cumulative to Stevens's admissible — and uncontradicted — testimony that he saw Simmonds shoot Rouse. *See Browne v. People*, 56 V.I. 207, 237 (V.I. 2012); *Blyden v. People*, 53 V.I. 637, 657 (V.I. 2010). Moreover, Simmonds's defense may have benefited from admission of the inconsistent statement, since Edmeade proceeded to testify that Phipps had included those claims in the statement even though he told him that he never saw the shooting.[12] (J.A. 661-63.) This testimony likely assisted Simmonds by providing a basis to challenge Phipps's credibility that would otherwise have been unavailable to him, thus increasing the possibility that the jury may believe Simmonds's claims that Phipps failed to follow proper police procedure in investigating the case.[13] (J.A. 725-27.) In fact, Simmonds's counsel invoked Edmeade's testimony during closing arguments to support this very theory. (J.A. 936-42.) *See, e.g., People v. Zapien*, 4 Cal. 4th 929, 17 Cal. Rptr. 2d 122, 846 P.2d 704, 733 (1993) (prior inconsistent statement of defendant's sister benefited

---

[12] As we noted earlier, even under Rule 801(d)(1)(A), the People could have introduced Edmeade's prior inconsistent statement for the limited purpose of impeachment. However, courts have consistently held that prosecutors may not call a witness for the sole purpose of impeaching him with otherwise inadmissible evidence. *See, e.g., United States v. Gomez-Gallardo*, 915 F.2d 553, 555 (9th Cir. 1990); *United States v. Peterman*, 841 F.2d 1474, 1479 (10th Cir. 1988); *United States v. Webster*, 734 F.2d 1191, 1192 (7th Cir. 1984). Consequently, it is likely, had it applied Rule 801(d)(1)(A) rather than section 19, that the Superior Court would have prohibited Edmeade from testifying at all, which would have had the effect of Simmonds not being able to utilize Edmeade's explanation of his statement as a means to attempt to impeach Phipps's credibility.

[13] During trial, Simmonds contended that the Virgin Islands Police Department — and Phipps in particular — repeatedly failed to investigate the possibility that someone else had shot Rouse. For instance, Simmonds elicited testimony from various witnesses that a video camera may have recorded the shooting, and argued that Phipps made no attempt to obtain the tape and otherwise did not follow proper procedures.

both prosecution and defendant by providing defendant with means to impeach witness's testimony); *Edwards v. State*, No. M2002-02124-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 1090, \*35 (Tenn. Crim. App. Dec. 15, 2003) (unpublished) (error harmless when prior inconsistent statement used by defense counsel as a vehicle to impeach credibility of witnesses). For alleged non-constitutional errors, "we will affirm when it is highly probable that the error did not contribute to the judgment." *Connor v. People of the Virgin Islands*, S. Ct. Crim. No. 2011-0021, 2013 V.I. Supreme LEXIS 31 (V.I. July 2, 2013) (citing *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000)). *See also Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 90 L. Ed. 1557 (1946) (a non-constitutional error is harmless if the record allows the appellate court to conclude "with fair assurance . . . that the judgment was not substantially swayed by the error"). For the reasons noted above, in the present context it is highly probable that admission of Edmeade's prior inconsistent statement did not affect the jury's verdict, and hence the error was harmless.

### F. *Pro Se* Motion for New Trial

██ ██ According to Simmonds, the Superior Court also erred when it *sua sponte* denied his *pro se* motion for a new trial as untimely.[14] Upon reviewing the motion, the Superior Court noted that the first page of Simmonds's *pro se* motion was dated June 22, 2012 — a date within 10 days of the jury verdict — but that the last page bore the date July 23, 2012, and relied on that second date to deny the motion as untimely. (J.A. 1035-36, 1039.) Nevertheless, we need not decide whether Simmonds timely filed his motion because Simmonds, as a litigant represented by court-appointed counsel, lacked a right to file *pro se* motions with the Superior Court. As this Court has previously explained, "the United States Constitution does not guarantee the right to 'hybrid' representation." *Boston v. People*, 56 V.I. 634, 639 n.8 (V.I. 2012) (citing *McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S. Ct. 944, 79 L. Ed. 2d 122 (1984)). To the extent Simmonds wished to have these arguments considered on the

---

[14] "A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment. A motion for a new trial based on other grounds shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10-day period." SUPER. CT. R. 135.

merits, he was required to either (1) request that his attorney file the appropriate motion on his behalf, or (2) initiate a collateral proceeding, such as by filing a *pro se* petition for writ of habeas corpus. Therefore, even if Simmonds had filed his *pro se* motion within the 10 day period provided for in Superior Court Rule 135, the Superior Court was not obligated to consider the document on the merits while Simmonds remained represented by counsel.

## G. Sentencing

Finally, Simmonds argues that the Superior Court failed to sentence him in accordance with section 104 of title 14. However, as noted above, the Superior Court stayed execution of Simmonds's convictions for first-degree assault and unauthorized use of a firearm during commission of a first-degree assault.[15] While Simmonds argues that the portion of section 2253 requiring that the penalty imposed for the weapons offense be "in addition to the penalty provided for the commission of . . . the felony or crime of violence," 14 V.I.C. § 2253(a), violates the Double Jeopardy Clause of the Fifth Amendment and is inconsistent with section 104 of title 14, this Court has already considered and rejected these arguments, and Simmonds has set forth no arguments that would warrant setting aside those precedents. *See, e.g., Williams*, 58 V.I. at 350; *Ward v. People*, 58 V.I. 277 (V.I. 2013). Consequently, the Superior Court committed no error with respect to Simmonds's sentence.[16]

## III. CONCLUSION

For the foregoing reasons, we affirm the August 15, 2012 Judgment.

---

[15] In his appellate brief, Simmonds argues that the Superior Court, by staying execution of his sentences for his assault and corresponding firearm conviction pursuant to section 104, violated his Sixth Amendment right to a speedy trial because "a speedy trial concludes with a sentence" and "a 'stayed' order . . . may be modified or vacated" at any time. (Appellant's Br. 17-18.) In *Williams*, this Court rejected an identical argument as being without merit, 58 V.I. at 352, and Simmonds has provided this Court with no reason to depart from that decision.

[16] Simmonds also argues in his appellate brief that the cumulative error doctrine justifies setting aside his convictions. Even if were to adopt the cumulative error doctrine, since the Superior Court only committed only a single error when it permitted the People to introduce Edmeade's prior inconsistent statement into evidence, the cumulative error doctrine — which authorizes a new trial in the event of multiple errors that are individually harmless but deemed harmful in the aggregate — is inapplicable to this case. *Rawlins*, 58 V.I. at 275 (citing *Nicholas v. People*, 56 V.I. 718, 750 n.24 (V.I. 2012)).